IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHELLE L. PENN,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 4:23-CV-01154-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OF OPINION AND ORDER** |

Plaintiff Michelle Penn challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On September 1, 2023, the parties consented to my exercising jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #9). Following review, and for the reasons stated below, I **REVERSE** the Commissioner's decision and **REMAND** for additional proceedings consistent with this opinion.

PROCEDURAL BACKGROUND

Ms. Penn filed for DIB and SSI in March 2021, alleging a disability onset date of August 3, 2017. (Tr. 221, 228). Later, Ms. Penn amended her alleged onset date to January 11, 2020. (Tr. 41). After her claims were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (Tr. 75-94, 97-115, 152-54). Ms. Penn (represented by counsel) and a vocational expert (VE) testified before the ALJ on April 5, 2022. (Tr. 35-56).

On June 7, 2022, the ALJ found Ms. Penn not disabled. (Tr. 12-34). The Appeals Council denied Ms. Penn's request for review, making the hearing decision the final decision of the

1

Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481). Ms. Penn timely filed this action on June 8, 2023. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Ms. Penn was 46 years old on her amended alleged onset date and 48 years old at the administrative hearing. (Tr. 75). Ms. Penn completed 11th grade but did not graduate from high school. (Tr. 44). She worked as a cashier in a gas and convenience store for about twenty years but stopped working in 2017. (Tr. 43).

### II. Administrative Hearing

At the hearing, counsel for Ms. Penn stated she has asthma, fibromyalgia, osteopenia in both hands, advanced degenerative joint disease in both knees, stabbing pain in her heels, multi-level degenerative disc disease in the lumbar spine, and mental health conditions that cause issues with persistence, pace, and dealing with the pressures of work. (Tr. 41-42).

Ms. Penn lives with her 16-year-old son. (Tr. 44). She can drive but does not typically leave the house. (Tr. 44). She cooks for her son and does "odds and ends" around the house but otherwise sleeps most of the day because she is depressed. (Tr. 44). This has been her routine for several years. (Tr. 44).

Ms. Penn testified she cannot work because she cannot think, cannot stand for long periods of time due to sharp pains on the bottoms of her feet, cannot sit for more than five minutes before she needs to get up and stretch her back, cannot lift more than a gallon of milk, has pain and stiffness in her hands that make it difficult to grasp or write, feels depressed, and has

anxiety being around other people. (Tr. 45-48). She has difficulty catching her breath, especially in the cold weather. (Tr. 47).

Ms. Penn takes medication for high blood pressure, fibromyalgia, depression and anxiety, diabetes, asthma, back pain, high cholesterol, and ulcerative colitis. (Tr. 50). She takes them as prescribed even though some of the medications cause dizziness and lightheadedness. (Tr. 51). She met with a counselor about six months to a year ago and, at the time of the hearing, was scheduled to meet with a new counselor. (Tr. 48-49). She also sees a psychiatrist. (Tr. 49).

The VE testified that a person of Ms. Penn's age, education, and experience, with the functional limitations described in the ALJ's residual functional capacity (RFC) determination, could not perform her past relevant work. (Tr. 52-54). The VE identified light exertion, unskilled positions the hypothetical person could perform, including housekeeping cleaner, merchandise marker, and routing clerk. (Tr. 52). The VE also testified a person cannot maintain work if off task for more than 10 percent of the workday. (Tr. 54).

### III. Relevant Medical Evidence[1]

On March 23, 2021, Ms. Penn established care at the Trumbull Mahoning Medical Group, Inc., and requested an additional antidepressant to add to her existing prescription for Zoloft. (Tr. 871). The doctor prescribed Abilify. (Tr. 873). Ms. Penn returned on April 16, 2021, and reported her depressive symptoms were under control with Zoloft and Abilify. (Tr. 869). She continued to describe her symptoms as stable with Zoloft and Abilify in July and October 2021 and January 2022, necessitating no other psychiatric prescription changes. (Tr. 1363, 1367, 1371).

### IV. Medical Opinions

---

[1] Ms. Penn's claimed error focuses on the ALJ's evaluation of her mental health impairments. As such, I address only evidence relevant to her argument.

On May 21, 2021, Ms. Penn attended a consultative psychological evaluation at the behest of the Social Security Administration. (Tr. 1092-98). Jennifer Haaga, Psy.D., performed the evaluation and based her opinions on the clinical interview on an unspecified "page of a medical note." (Tr. 1092). Ms. Penn reported she cannot work because she has pain, depression, and anxiety. (*Id.*). She described a limited lifestyle that became more limited in the past year, claiming to socialize only with her son and not leaving the house unless she has a doctor's appointment. (Tr. 1093). She endorsed working at a gas and convenience store until 2017 when she was diagnosed with thyroid cancer. (*Id.*). Ms. Penn has never been fired from a job and does not have a history of interpersonal problems with supervisors, coworkers, or customers. (*Id.*).

Dr. Haaga noted Ms. Penn was cooperative during the interview and readily volunteered information. (Tr. 1094). Ms. Penn appeared "somewhat down" with a congruent affect. (Tr. 1095). She did not demonstrate any motor manifestations of anxiety but claimed to be nervous and sweaty. (*Id.*). She endorsed symptoms of anxiety, especially around other people, including decreased concentration and feeling as though she cannot breathe. (*Id.*). She also endorsed symptoms of posttraumatic stress disorder and panic disorder. (*Id.*). Dr. Haaga noted Ms. Penn was not responding to internal stimuli and her speech was free from delusional content. (*Id.*).

Sensorium and cognitive function testing placed Ms. Penn in the low average range of cognitive ability and Dr. Haaga described adequate attention, concentration, and ability to abstract. (Tr. 1096). Ms. Penn demonstrated some difficulties with recent memory functioning during the evaluation. (*Id.*). She brought a list of her medications and conditions to remind her of them during the interview and recalled two of three objects after one minute and five minutes. (*Id.*). Ms. Penn described putting her medical appointments into a calendar and leaving her

4

medications out so that she remembers to take them. (*Id.*). Dr. Haaga determined Ms. Penn has adequate commonsense reasoning and judgment, has adequate insight into her current situation, and appears cognitively and psychologically capable of living independently and making decisions about her future. (*Id.*). Dr. Haaga offered the following opinions:

> **Describe the claimant's abilities and limitations in understanding, remembering, and carrying out instructions.**
> She described some difficulties with memory and demonstrated some difficulties with memory during the current evaluation. She is capable of comprehending and completing simple routine tasks as well as some more complex, familiar tasks. She is reporting some problems with memory at this time and may have difficulties in learning new jobs or tasks. This may be related to symptoms of anxiety and depression.
>
> **Describe the claimant's abilities and limitations in maintaining attention and concentration, and in maintaining persistence and pace, to perform simple tasks and to perform multi-step tasks.**
> She recalled six digits forward and three digits backward on the digit span task. However, her symptoms of depression and anxiety will likely cause difficulties in this area or will exacerbate those difficulties that she does have. This will make many tasks somewhat more difficult. Specifically, when the demands become too great, Ms. Penn will have some difficulty with attention and concentration. She stated that she has difficulties with managing worries and depressive symptoms. She indicated this is more problematic when she is around other people. She feels that a combination of problems with motivation as well as physical limitations affect her persistence and pace.
>
> **Describe the claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting.**
> Ms. Penn's interaction with this examiner during the current evaluation was adequate, and she described that she has maintained okay relationships with family. She has a history of no interpersonal problems with supervisors, coworkers, and customers. She stated that she is nervous around other people at she is judged. This would affect her ability to respond appropriately to conflict or criticism in a work environment.
>
> **Describe the claimant's abilities and limitations to responding appropriately to work pressures in a work setting.**
> Ms. Penn takes psychiatric prescription medication to help manage symptoms but continues to experience difficulties. She has positive relationships with family. These relationships may create a positive social support system which may positively

5

> influence her ability to withstand stress and pressures of work activities. She reported that she is easily anxious and overwhelmed and will "overthink" situations. She also reported fleeting suicidal thoughts and is likely to experience increased symptoms if she feels she is unable to successfully complete tasks.

(Tr. 1098).

On June 14, 2021, State agency psychological consultant Aracelis Rivera, Psy.D., reviewed Ms. Penn's records and determined she has mild limitations in understanding, remembering, and applying information and moderate limitations in her abilities to interact with others, adapt or manage oneself, and concentrate, persist, or maintain pace. (Tr. 79). More specifically, Dr. Rivera determined Ms. Penn is moderately limited in her ability to maintain attention and concentration for extended periods and her ability to complete a workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; as a result, she can sustain simple to moderately complex tasks without a fast-paced production requirement. (Tr. 81). Dr. Rivera found Ms. Penn moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them; as a result, she can interact with others superficially on an occasional basis. (Tr. 82). Finally, Dr. Rivera determined Ms. Penn is moderately limited in her abilities to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others; as a result, she can adapt to settings where duties are relatively static, and changes are infrequent and can be adjusted to over time. (*Id.*).

On September 24, 2021, Dr. Haaga performed a second consultative evaluation and offered largely similar opinions from those in May 2021. (Tr. 1344-50). Of note, Dr. Haaga noted Ms. Penn "reported some difficulties with recent memory functioning and demonstrated no

6

significant difficulties during the evaluation." (Tr. 1348; *see also* Tr. 1350) ("She described some difficulties with memory and demonstrated no difficulties with memory during the current evaluation."). Otherwise, Ms. Penn stated her motivation and avoidant tendencies have been more problematic and she finds it difficult to complete tasks, be around other people, and leave her home. (Tr. 1350). Dr. Haaga felt Ms. Penn would likely struggle to manage most work pressures in competitive employment situations. (*Id.*).

On October 7, 2021, State agency psychological consultant Janet Souder, Psy.D., affirmed Dr. Rivera's opinions. (Tr. 104).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet or medically equal one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

7

> 5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

The ALJ issued an unfavorable decision on June 7, 2022. (Tr. 12-34). At Step One, the ALJ determined Ms. Penn meets the insured status requirements of the Social Security Act through June 30, 2022 and has not engaged in substantial gainful activity since January 11, 2020, the amended alleged onset date. (Tr. 18). At Step Two, he determined Ms. Penn has severe impairments of spondylarthritis of the lumbar, degeneration of intervertebral discs, arthritis, asthma, obesity, depressive disorder, and anxiety disorder. (Tr. 19). At Step Three, the ALJ determined Ms. Penn does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (*Id.*). The ALJ reviewed Ms. Penn's medical records, hearing testimony, and medical opinions to conclude she remains capable of light work with additional limitations including:

> never crawl or climb ladders, ropes, or scaffolds. She can occasionally balance (as defined in the SCO), stoop, kneel, crouch, and climb ramps and stairs. The claimant must avoid concentrated exposure to extreme cold or exposure to pulmonary

irritants, such as fumes, dust, gases, odors, and poor ventilation. She must avoid the use of moving machinery, commercial driving, and unprotected heights. The claimant can perform simple, routine, and repetitive tasks. The work environment must be free of fast-paced production requirements and involve only routine workplace changes. She can have occasional public contact and occasional interaction with co-workers. The claimant is limited to superficial contact with others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others.

(Tr. 21). At Step Four, the ALJ determined Ms. Penn could not perform her past relevant work. (Tr. 25). At Step Five, he determined jobs exist in significant numbers in the national economy that Ms. Penn can perform and concluded she was not disabled. (Tr. 26-27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account

whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not

10

mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## DISCUSSION

Ms. Penn raises a single issue for review. She argues the ALJ's evaluation of the medical opinion evidence, specifically his rejection of the State agency psychological consultants' opinion that she can have occasional contact with supervisors, renders the RFC unsupported by substantial evidence. (ECF #12 at PageID 1466). Ms. Penn believes the factors on which the ALJ relied are not relevant to the determination of whether she can have more than occasional contact with supervisors, including her ability to live with her 16-year-old son without "substantial ongoing discord," her appropriate behavior during medical appointments, her appropriate behavior at the time of the hearing, and her ability to work with others during a period of time when she was not claiming disabling symptoms. (*Id.* at PageID 1467-69). She also claims the ALJ did not discuss the supportability or consistency of those opinions, precluding meaningful review of the decision. (*Id.* at PageID 1467, 1469).

The Commissioner confirms the ALJ's decision to not limit contact with supervisors in the RFC is based on Ms. Penn's cooperation on examination and reported a lack of problems with authority figures and that determination is supported by substantial evidence. (ECF #14 at PageID 1485). The Commissioner otherwise claims the ALJ adequately articulated his position on both the consistency and supportability of the medical opinions and Ms. Penn's argument is "merely a request to reweigh the evidence." (*Id.*).

A claimant's RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The

ALJ alone is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC must be based on all relevant evidence in the record, including medical evidence, medical reports and opinions, the claimant's testimony, and statements the claimant made to medical providers. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, *2 (N.D. Ohio Mar. 2, 2010).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ must explain how he considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. See 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). I look to the whole document when reviewing the ALJ's decision. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). The ALJ must make the reasons for the supportability and consistency analysis sufficiently clear for subsequent review to determine whether substantial evidence supports the claimant's disability determination. *Id.* "So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

> The ALJ evaluated Dr. Haaga's opinions as follows:
>
> The claimant had a psychological consultative exam with Jennifer Haaga, Psy.D. in May 2021, where the claimant reported that she took Abilify and Zoloft, but she had

>no formal diagnosis. She described having fatigue and poor motivation. She also described having anxiety and trouble remembering directions. She was dressed appropriately with adequate hygiene and cooperative behavior. She had a somewhat down mood but no suicidal ideation or motor manifestations of anxiety. The claimant described having poor concentration, nervousness, and anxiety when around others. She displayed low average cognition and adequate attention and concentration. She also exhibited adequate reasoning and judgment.
>
>Dr. Haaga stated that the claimant might have difficulty learning new jobs or tasks, maintaining concentration, responding appropriately to conflict or criticism, and managing stress. The claimant later had another consultative exam with Dr. Haaga and Dr. Haaga offered a similar opinion. I find Dr. Haaga's opinions somewhat persuasive. The exam findings documented some mood and anxiety symptoms, but she had low average cognition, intact concentration, and appropriate behavior. Moreover, Dr. Haaga's assessment was somewhat vague with minimal description of specific functional limitations.

(Tr. 23-24).

>The ALJ evaluated the State agency psychological consultants' opinions as follows:
>
>State Agency psychological consultants opined that the claimant had mild limitations in understanding, remembering, or applying information with moderate limitations in the other paragraph B criteria. The consultants found that the claimant could sustain simple to moderately complex (1-4 step) tasks without fast pace with occasional and superficial interaction with others. The consultants said that the claimant could adapt to setting with relatively static duties and where changes were infrequent and could be adjusted to over time. I find such opinions persuasive in general because the record showed that the claimant's ongoing mental symptoms limited her to a relatively static and socially limited environment as the consultants described. However, the claimant's largely inappropriate behavior and the lack of demonstrated problems with authority figures did not establish that she was limited to occasional contact with supervisors.

(Tr. 24).

While I agree with the Commissioner that the ALJ articulated how he considered the consistency and supportability of the opinion, the ALJ's reasoning is not supported by substantial evidence. Here, the ALJ accepted the State agency medical consultants' opinions that Ms. Penn was moderately limited in her abilities to interact appropriately with the general public and to get

13

along with coworkers and peers, but rejected the opinion that she was moderately limited in her ability to accept instruction and respond appropriately to supervisors. (Tr. 82). The ALJ then crafted an RFC that included limitations to occasional contact with the public and occasional interaction with coworkers but did not include any restriction related to interaction with supervisors, relying on Ms. Penn's "largely appropriate behavior" and lack of demonstrated problems with authority figures for support. (Tr. 24). Elsewhere in the decision, the ALJ briefly addressed Ms. Penn's ability to interact with others, stating she was moderately limited because she lived with her son without "substantial ongoing discord," and did not have any behavioral problems, citing her appropriate behavior at medical appointments. (Tr. 20).

The ability to live with family members and cooperate during medical appointments are factors relevant to a claimant's ability to interact with others in a work setting on a sustained basis, but case law suggests these factors are not sufficient, on their own, to support an ALJ's decision to discount a medical opinion. *See Gayheart v. v. Comm'r of Soc. Sec.,* 710 F.3d 365 (6th Cir. 2013) (claimant's ability to visit his aunt and uncle, to receive visits from his neighbors, and accompany his wife to the grocery store each month did not undermine the doctor's opinion that plaintiff's ability to interact independently and appropriately with others on a sustained basis was markedly impaired); *Daugherty v. Comm'r of Soc. Sec.,* No. 1:16-cv-898, 2017 WL 3987867, at *8 (S.D. Ohio July 20, 2017) (finding reversible error where ALJ rejected an opined limitation that claimant must work in a setting free from social interaction based on the claimant's "ability to maintain stable relationships with her daughter and mother, a long-term relationship with her fiancé, and her presentations and behavior during treatment sessions," noting that long-term familial relationships that predate alleged disability, or relationships with medical providers, are not equivalent to the

14

type of social interactions the claimant would encounter in the workplace), *report and recommendation adopted*, 2017 WL 3965326 (S.D. Ohio. Sept. 8, 2017).

This is not to say an ALJ can never rely on such factors when making a disability determination. Indeed, a claimant's observed behavior on examination and the ability to maintain relationships with family are factors on which the ALJ may reasonably rely, so long as the ALJ supports the decision with other pertinent factors. *See Ellis v. Comm'r of Soc. Sec.*, No. 3:20-cv-469-SKL, 2021 WL 9526868, at *9 (E.D. Tenn. Dec. 14, 2021) (stating that "[c]ooperative behavior during a doctor's appointment may not be sufficient, by itself, to show only a moderate limitation in interacting with others," but the factor is relevant).

As one court has explained when concluding the ALJ erred when the ALJ rejected the opinion of a claimant's physician:

> The fact that a claimant manages to be cooperative with her healthcare providers does not contradict those providers' opinions that the claimant is severely limited in her ability to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is not like the relationship a worker has with her coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting.

*Sanders v. Comm'r of Soc. Sec.*, No. 19-cv-13280, 2021 WL 1056816, at *4 (E.D. Mich. Mar. 19, 2021) (quoting *Tina R. v. Comm'r of Soc. Sec.*, No. C18-1041JLR, 2019 WL 1417301, at *1 (W.D. Wash. Mar. 29, 2019)).

15

Because the ALJ's decision to omit a limitation to occasional contact with supervisors into the RFC is not supported by substantial evidence, the ALJ's failure to do so constitutes reversible error and requires remand.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, I **REVERSE** the Commissioner's decision denying disability insurance benefits and supplemental security income and **REMAND** for additional proceedings consistent with this opinion.

Dated: April 19, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE